**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | **CRIM. NO. JRR-26-222** |
| **MAURICE MONROE DOTSON,** | * | |
| | * | |
| **Defendant** | * | |

**...oOo...**

**MEMORANDUM IN SUPPORT OF REQUEST TO**
**REVIEW AND REVOKE ORDER SETTING CONDITIONS OF RELEASE**

The United States of America, by and through its attorneys, Kelly O. Hayes, United States Attorney for the District of Maryland, and Kevin Reinoso, Special Assistant United States Attorney for said District, pursuant to 18 U.S.C. § 3145(a)(1) and Local Rule 302.1, requests the United States District Court for the District of Maryland review and revoke the August 14, 2026 order setting conditions of release.

## I. PROCEDURAL HISTORY

On June 25, 2026, the Defendant, Maurice Monroe Dotson, was charged in an indictment with a sole count of possession with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). ECF No. 1. An arraignment and initial appearance for the Defendant on the indictment was held on July 6, 2026. ECF Nos. 8 and 9. At that initial appearance, the Defendant pled not guilty to the sole count of the indictment, ECF No. 9, and consented to an order of temporary detention pending trial, ECF No. 11.

Thereafter, Counsel for the Defendant requested a detention hearing, which was scheduled for August 14, 2026. Prior to the hearing, the Government filed a memorandum in support of continued detention. ECF No. 22. Counsel for the Defendant did not submit briefing in support of release. At the hearing, Magistrate Judge Charles D. Austin stated that he reviewed the

Government's memorandum, as well as the report issued by the United States Probation Office (the "Pre-Trial Services Report"), which recommended the Defendant continued to be detained. *See* Pre-Trial Services Report at 14. His Honor Judge Austin then heard oral argument from the parties. At the conclusion of the hearing, the Defendant was ordered released from custody to home confinement at his residence. ECF No. 24 at 2. Jamie Wallner, the Defendant's wife, agreed to be a third-party custodian. *Id.* at 1. The Court further ordered that the Defendant be placed on location monitoring, along with other standard conditions. *Id.* at 2.

The Government requests that the United States District Court for the District of Maryland review and revoke the order issued setting conditions of release.

## II. LEGAL STANDARD

### A. Standard of Review on Review of Order

"When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (citing *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992)); *see also United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989). On appeal, the question becomes "whether the evidence as a whole supports the conclusions of the proceedings below." *Stewart*, 19 F. App'x at 48 (citing *United States v. Trosper*, 809 F.2d 1107, 1111 (5th Cir.1987)).

### B. *De Novo* Review of Determination of Release

The Government seeks the Defendant's continued detention pending trial because of the Defendant's danger to the community. 18 U.S.C. 3142(f)(1)(C). As this is "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act" there is rebuttable presumption "that no condition or combination of conditions will

reasonably assure . . . the safety of the community . . . .” *Id.* at (e). The factors a court must consider in determining whether a defendant poses a danger to the community include:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . a controlled substance [or] firearm;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person . . . ; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person’s release.”

18 U.S.C. § 3142(g). In this case, an examination of the § 3142 factors demonstrates that the Defendant should be detained pending trial.

**i. The Nature and Circumstances of the Offense**

In September 2025, Homeland Security Investigations (HSI) agents identified a United Parcel Service (UPS) account through which a parcel that contained multi-kilogram quantities of cocaine was sent. HSI’s investigation into the account established that the account was being used to send parcel shipments of cocaine from California to residential addresses on the east coast. Based on these findings, HSI requested that UPS provide proactive notifications to HSI for future inbound shipments from this target shipper account that met certain criteria. On March 10, 2026, pursuant to that notification agreement, an HSI agent received an alert from UPS that a relevant parcel (“Parcel 1”) was in transit to 5630 Belair Road, Baltimore, Maryland 21206 (“5630 Belair Road”).

On March 12, 2026, Maryland State Police troopers, working with HSI at a UPS facility, identified and interdicted Parcel 1. The troopers obtained a search and seizure warrant, opened Parcel 1, and located 5.7 kilograms of cocaine. The troopers then planned to do a controlled delivery of Parcel 1 and removed a portion of the cocaine and left approximately 1.1 kilograms of cocaine for the controlled delivery.

While waiting to conduct the controlled delivery, the troopers observed a yellow Penske truck deliver a separate parcel ("Parcel 2") to 5630 Belair Road. Parcel 2 had similar characteristics to Parcel 1. A resident of the house took Parcel 2 into the home. Shortly thereafter, the Defendant arrived at 5630 Belair Road in a black vehicle. The Defendant briefly entered the residence, then exited with Parcel 2. The Defendant loaded Parcel 2 into his vehicle and drove to the end of the block where he sat in his vehicle. The troopers then delivered Parcel 1 to the residence. The same resident retrieved Parcel 1 and took Parcel 1 into the home. Once again, the Defendant took the parcel into his vehicle. The troopers stopped and arrested the Defendant before he could get into the driver's seat of his vehicle.

The troopers once again obtained a search and seizure warrant, this time for the vehicle. Inside the vehicle, the troopers located Parcel 1, Parcel 2, and a cellphone. The troopers opened Parcel 2 located 5.8 kilograms of cocaine. A second cellphone was located on the Defendant's person. After his arrest, the Defendant agreed to speak with law enforcement. During the interview, the Defendant stated that in July 2025 an unknown Mexican male approached him, told him he was "going to start paying off [his] debt," and instructed him to retrieve and transport parcels to hotel rooms where other unknown individuals would pick them up. The Defendant explained that this debt arose from a prior drug distribution case in which police raided his shop in Baltimore, Maryland, and seized large quantities of cocaine and fentanyl belonging to a Mexican male he knew as "Miguel."

An HSI agent obtained a search and seizure warrant for both cellphones recovered. A review of the phone recovered from the Defendant's person uncovered screenshots of multiple domestic flight bookings between LAX and BWI during the timeframe in which the FedEx and UPS parcel shipments referenced above were shipped and additional flights starting in early 2026

with similar characteristics. Subpoenas were issued to United Airlines and confirmed that the Defendant traveled on the same flight to and from LAX from BWI on March 7–8, 2026 matching the phone screenshots**.**

A review of the phone recovered from the Defendant's vehicle revealed that the Defendant was tracking other parcels with similar characteristics as the two seized drug-laden parcels on March 12, 2026. The Defendant had tracked those unrelated packages a total of 335 times. Particularly relevant to this case is that the Defendant also tracked Parcel 1 31 times over two days, as well as Parcel 2 42 times over the same period.

The nature and circumstances of this offense are serious. The Defendant engaged in a cross-country and sophisticated scheme with the intent of distributing a significant amount of cocaine. The Defendant's role as a courier in this case does not mitigate the seriousness of the nature and circumstances of the offense. In fact, it shows the ease with which he can engage in his scheme from anywhere he deems appropriate. Clearly, this factor favors detention.

**ii. Weight of the Evidence**

The evidence in this case is strong. As discussed *supra*, Section II(B)(i), the Defendant was found to be in possession of two parcels that contained a significant amount of cocaine. The Defendant also spoke with law enforcement officers and provided information that shows the Defendant knew what was inside the parcels based on prior experiences. Beyond that, the Defendant's phones contained evidence that the Defendant continuously tracked these parcels well beyond that of a typical shipment. Finally, flight records show that the Defendant was in California around the timeframe when these packages were shipped. The evidence in this case is strong and this factor clearly supports continued detention.

**iii. History and Characteristics of the Person**

The Defendant's criminal history began in 1994, and includes a total of three felony state convictions, sixteen misdemeanor convictions, and two federal convictions. *See* Pre-Trial Services Report at 4–12. Of those twenty-one convictions, the Defendant has been convicted of a firearm offense (his very first conviction), two state felony controlled substance offenses, and a federal controlled substance offense. *Id.*

Two years after the Defendant's 1994 conviction for carrying a firearm without a license and reckless endangerment, he was convicted of possession of a controlled substance with the intent to distribute. *Id.* at 4. That conviction resulted in a fully suspended five-year sentence and a period of probation. *Id.* By 1999, and during the period of probation, the Defendant was convicted of five ticket scalping offenses. *Id.* at 5–7. Those convictions resulted in the Defendant's probation being continued. *Id.* at 4. One of those ticket scalping convictions resulted in the Defendant once again being placed on probation, which the Defendant violated. *Id.* at 7. In 2001, the Defendant was placed on three separate probations for separate stalking, trespassing, and ticket scalping convictions. *Id.* at 8. The Defendant violated the stalking probation but was once again continued on probation. Between 2003 and 2004, the Defendant was convicted of forgery, two separate ticket scalping offenses, second degree assault, and malicious destruction of property. *Id.* at 9. The latter two convictions resulted in the Defendant being placed on a period of probation, which he violated four months into the period of probation.

In 2011, while the Defendant was released on his own recognizance pending trial for his federal controlled substance offense, the Defendant was arrested for driving under the influence. *Id.* at 11. The following ten years was the longest the Defendant had gone in his adult life without committing a crime. *See id.* Then, in 2022, the Defendant was convicted of participation in a

criminal organization, conspiracy to distribute controlled substances, and possession of controlled substances with the intent to distribute, and sentenced to fifteen years of incarceration, all but eight years suspended. *Id.* at 11–12. However, in August of 2024, the Defendant's sentence was modified to fifteen years, all suspended but the time he had already served, and placed on a period of probation. *Id.* The modification was made so that the Defendant could be released to drug treatment and in December 2024, the Defendant was released to a 90-day treatment program. *Id.* at 3. The Defendant successfully completed the program. Approximately one year later, the Defendant has once again been indicted federally on a third felony controlled substance offense, in alleged violation of his probation.

Not only is the Defendant's criminal history serious and lengthy, but it is also not constrained to Maryland. The Defendant has convictions in Maryland, Pennsylvania, Florida, and New Jersey. *Id.* at 9. From the bottom of the eastern seaboard to the top, the Defendant has consistently shown he will commit crimes.

The Defendant's history and characteristics show that he engages in serious criminal conduct, performs poorly under supervision, and that his conduct is not constricted to a small geographical location. This factor also supports the Defendant's continued detention.

**iv. The Nature and Seriousness of the Danger to the Community in the Event of the Defendant's Release**

There is a real danger to the community in the event of the Defendant's release pending trial. The Defendant's drug trafficking preyed on vulnerable victims while the Defendant profited. For that reason, drug dealing in general, even absent violence, is inherently dangerous to the public. This reality has been recognized and codified in 18 U.S.C. § 3142(e)(3)(A), which establishes a rebuttable presumption in favor of detention for defendants charged with drug trafficking crimes punishable by a maximum term of imprisonment of ten years or more. The Defendant's conduct

demonstrates a clear threat to the safety of the community if the Defendant were to be released pending trial.

**v. Jamie Wallner is Not Suitable as a Third-Party Custodian**

As part of the order setting conditions of release, the Defendant was placed in the custody of Jamie Wallner, ECF No. 24 at 1, the Defendant's wife since 2013, Pre-Trial Services Report at 1. Ms. Wallner is being asked to be the eyes and ears of the Court despite her marriage to the Defendant. The Court entrusted Ms. Wallner despite her having lived with the Defendant when he allegedly committed this offense. During their marriage, the Defendant was on probation for a case involving three serious convictions. *Id.* at 11–12. Not only did he commit those offenses during their marriage, but he is also alleged to have violated his probation with this case. Ms. Wallner is not a suitable third-party custodian.

## III. CONCLUSION

For the reasons set forth above, the Government respectfully requests that the order setting conditions of release issued on August 14, 2026, be revoked and order the Defendant be detained pending trial. The Government submits that no condition or combination of conditions will protect the community.

Respectfully Submitted,

Kelly O. Hayes
United States Attorney

By:____________/s/____________
Kevin Reinoso
Special Assistant United States Attorney
United States Attorney's Office
36th South Charles Street, 4th Floor
Baltimore, Maryland 21202
(410) 209-4800

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 14, 2026, a copy of the foregoing Memorandum was filed via ECF.

/s/

Kevin Reinoso
Special Assistant United States Attorney